**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(Eastern Division)**

| | | |
|---|---|---|
| MICHAEL A. DENOEWER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 2:17-cv-660 |
| | | Judge George C. Smith |
| UCO INDUSTRIES, INC., | * | Magistrate Judge Jolson |
| and | * | |
| HONDA OF AMERICA MFG., INC. | * | |
| Serve On:  Statutory Agent Corp. | | |
| 52 East Gay Street | * | |
| Columbus, Ohio 43215 | | |
| | * | |
| Defendants. | | |
| | * | |

ooo0ooo

# FIRST AMENDED COMPLAINT

Plaintiff Michael A. Denoewer (hereinafter "Plaintiff" or "Mr. Denoewer"), by and through his next friend, Tamara Basil, brings this Complaint against Defendant, UCO Industries, Inc. (hereinafter "UCO") and Honda of America Mfg., Inc. (hereinafter "Honda") for damages, declaratory relief, costs and attorneys' fees, and pre-judgment and post-judgment interest, and alleges as follows:

1.   Mr. Denoewer is an adult individual with intellectual and developmental disabilities who is autistic, non-verbal, and epileptic.  For nearly seven-and-a-half years, from July 2008 to December 2015, he was employed by UCO as a Production Associate.  Mr. Denoewer was paid a sub-minimum wage by UCO – as little as $1.38 per hour after taxes – for the entire time that he worked there.

2. UCO is a 501(c)(3) non-profit that exists to employ individuals with disabilities in a setting that is purportedly integrated (*i.e.*, one where individuals with disabilities work alongside individuals without disabilities). As UCO's CEO states in promotional video available on its website, "that is [UCO's] mission. That is [UCO's] whole purpose for surviving." *See* Video Embedded at About UCO Industries, Inc., available at http://www.ucoindustries.com/about-uco/ (last accessed Dec. 11, 2017).

3. Notwithstanding that mission, for the duration of Mr. Denoewer's time as an employee of UCO, UCO continuously violated the mandates of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and Ohio state law, which is interpreted *in pari materia* with the ADA. *See* Ohio Rev. Code Ann. § 4112.02; *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007). As the United States Court of Appeals for the Sixth Circuit has recognized:

> The thesis of the [ADA] is simply this: That people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have.

*Smith v. Chrysler Corp.*, 155 F. 3d 799, 805 (6th Cir. 1998) (quoting 136 Cong. Rec. S 7422-03, 7347).

4. UCO failed to adhere to that thesis. Based on unfounded assumptions and stereotypes regarding the limitations imposed by Mr. Denoewer's disabilities, UCO limited his job responsibilities as a Production Associate. Honda aided and abetted UCO in that conduct, as a result of which Mr. Denoewer lost valuable pay and experience.

**JURISDICTION AND VENUE**

5. This Court has subject matter-jurisdiction over Plaintiff's claims under the ADA pursuant to 28 U.S.C. § 1331 (federal question). This Court has subject-matter jurisdiction over

Plaintiff's claims under Ohio state law pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction) because those claims arise out of the same nucleus of operative fact and form part of the same case or controversy as Plaintiff's claims under the ADA.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the parties are residents of this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

7. Plaintiff Michael Denoewer is 28 years old and a resident of Marysville, Ohio. He is an individual with an intellectual and developmental disability, including autism. He is non-verbal and has epilepsy. Mr. Denoewer began his employment as a Production Associate at UCO in July 2008 on a part-time basis. He moved to full-time employment in June 2010 and remained in that position until December 2015. Before being employed by UCO, Mr. Denoewer completed multiple successful job trials, at minimum wage, with various employers in the community. He also had experience operating a document shredder in connection with his mother's accounting business and enjoyed doing so.

8. Defendant UCO Industries, Inc. is a non-profit organization incorporated under the laws of the State of Ohio. Its principal place of business is Marysville, Ohio. It exists to provide employment opportunities to individuals with intellectual and developmental disabilities in a setting that is purportedly integrated, *see*, *supra*, ¶ 2. UCO partners with businesses throughout central Ohio to provide light assembly, packing, warehousing and shipping, and document shredding services. Among UCO's most high-profile partners is Honda, for which it provides a variety of light assembly services.

9. Defendant Honda of America Mfg., Inc., is a for-profit organization incorporated under the laws of the State of Ohio. Honda maintains its principal place of business in Marysville, Ohio. Honda contracts with UCO to supply components for its new vehicles. By exercising its economic power so as to ensure that UCO's labor costs are low it orchestrated UCO's workplace operations in such a way that it aided, abetted, incited, compelled, and/or coerced UCO in doing acts declared by Ohio Rev. Code Ann. Ch. 4112 to be unlawful discriminatory practices and it attempted to directly or indirectly commit acts declared by Ohio Rev. Code Ann. Ch. 4112 to be unlawful discriminatory practices.

## STATEMENT OF FACTS

10. Until 2013, UCO operated as a sheltered workshop for individuals receiving services from the Union County Board of Developmental Disabilities ("UCBDD"). Since October 2013, UCO has operated as a private employer of people with disabilities independent of the UCBDD.

11. UCO holds itself out as "specializ[ing] in light assembly, re-packing, and warehousing." According to its website, UCO is "an International Tier 1 & Tier 2 Automotive supplier." About UCO Industries, Inc., *supra*.

12. In the automotive industry, Tier 1 suppliers are direct suppliers of a product or service to manufacturers, while Tier 2 suppliers are indirect suppliers, providing a product or service to Tier 1 suppliers. Due to the role Tier 1 suppliers play in the production of their vehicles, manufacturers closely monitor their Tier 1 suppliers' operations, including labor costs, workforce composition, and workplace methods. Honda closely monitors UCO's operations in that way and did so during the time that Mr. Denoewer was an employee of UCO.

13. Today UCO employs more than 130 Production Associates – many at sub-minimum wages pursuant to a certificate issued under 29 U.S.C. § 214(c) ("14(c) Certificate"). Some individuals covered by UCO's 14(c) Certificate make as little as $0.14 per hour performing tasks for Honda's benefit pursuant to its contract with UCO.

14. Mr. Denoewer was employed as such a Production Associate at sub-minimum wages for the entire time that he worked at UCO.

15. For the purpose of obtaining its 14(c) Certificate, UCO calculates its employees' piece rates by measuring the "Standard Productivity" of a non-disabled individual "[r]emov[ing] tissue from Honda portfolios" and "[r]emov[ing] tissue from Acura portfolios." *See* Ex. 1 (UCO Industries 14(c) Certificate Application to the Wage and Hour Division of the Department of Labor dated Jan. 27, 2016). Acura is Honda's luxury vehicle marque. UCO then pays some of its Production Associates who have disabilities according to a piece-rate without ensuring a base wage of at least the federal minimum wage, a protection guaranteed to workers without disabilities.

16. A job posting on UCO's website described the "Qualifications" needed for the position of Production Associate as: "Conducts self in a professional manner."

17. The same posting described the Primary Job Duties of Production Associates. Among them, Production Associates are required to: "compl[y] with job duties assigned by Production Trainer, Production Supervisor, Operation Manager or Quality Manager within individual limitations;" "respond[] well to redirection and various work as given;" "complete[] production duties as assigned;" and, "perform[] assembly line process as noted."

18. As a Production Associate, Mr. Denoewer completed light assembly work for UCO. He was principally responsible for unpacking and organizing the component parts of owner's manuals for new Honda vehicles.

19. UCO operates in a 72,000-square foot facility and Mr. Denoewer performed his work at an area of the facility known as "the tables." There, Mr. Denoewer, working alone at his workstation, would unpack the separate components of the Honda owner's manuals.

20. Mr. Denoewer was paid according to the number of Honda components he unpacked (*i.e.*, a piece-rate), but never less than $1.50 per hour and never at or above the federal minimum wage. In 2012, Mr. Denoewer's average wage per hour, after taxes, was approximately $1.74. In 2013, it was just $1.67 per hour.

21. The premier place to work in UCO's facility, however, was not the tables, but a separate area of the workshop known as "the line." *See* Video Embedded at Support for Individuals with Developmental Disabilities, available at http://www.ucoindustries.com/support-individuals-developmental-disabilities/ (last accessed Nov. 27, 2017). Individuals who are privileged to work on the line make at least minimum wage and complete tasks exclusively for Honda. For the duration of Mr. Denoewer's time as an employee of UCO, the individuals who worked on the line were separated from those who worked on the tables and the two groups of employees rarely, if ever, interacted with one another.

22. UCO also operates a document destruction (*i.e.*, shredding) operation on its work floor called File 13. Like the line, individuals who do work related to File 13 make at least minimum wage. From the time that UCO began its document destruction business until Mr. Denoewer left UCO's employ, the individuals who worked on File 13-related tasks were

separated from those who worked on the tables and the two groups of employees rarely, if ever, interacted with one another.

23. Individuals were assigned to work on the tables or on higher paying jobs including the line and the shredding operation based on the perceived nature of their disability (or whether they were disabled at all), such that individuals without disabilities or with disabilities perceived to be less severe, were assigned to the line and shredder, and individuals with disabilities perceived to be more severe were assigned to the tables.

24. Multiple individuals speaking on Mr. Denoewer's behalf requested that he be given an opportunity to work on the line. One of those individuals was Mr. Denoewer's mother, and next friend, Tamara Basil, who in response to a 2013 "U-Co-CCHS Stakeholder Survey" stated that she would like to see "different and varied job opportunities to be able to increase Michael's income." In the same survey in 2014, Mrs. Basil stated that she "would like to see Michael have access to other jobs besides just the folios" and that she would like to see a "change in Michael's job duties from time to time."

25. Notwithstanding the multiple requests made on Mr. Denoewer's behalf and the fact that Mr. Denoewer was qualified to work on the line, with or without accommodations, Mr. Denoewer was never given the opportunity to do so.

26. Likewise, notwithstanding the multiple requests made on Mr. Denoewer's behalf and the fact that Mr. Denoewer was qualified to work on File 13-related tasks, with or without accommodations, and in fact, even despite Mr. Denoewer's previous experience performing shredding, Mr. Denoewer was never given the opportunity to do so.

27. Mr. Denoewer was prohibited from working on the line even though no one from UCO adequately assessed his individual skills and abilities to determine whether he could

perform the tasks on the line, with or without reasonable accommodations, and if the latter, what accommodations he would need. In the absence of an adequate individualized assessment of Mr. Denoewer's abilities, UCO's failure to allow him to work on the line was based on erroneous assumptions and stereotypes about the limitations imposed by his disabilities.

28. Likewise, Mr. Denoewer was prohibited from doing work related to File 13 even though no one from UCO ever assessed his individual skills and abilities to determine whether he could perform File 13-related tasks, with or without reasonable accommodations.

29. On information and belief, UCO's contract with Honda determined how much Honda would pay for work performed by UCO's Production Associates – whether above or below minimum wage. As UCO's then-CEO explained to UCO's Production Associates in a February 2013 letter:

> As you know, Honda has greatly increased the volume of their production during the course of the past year. In order to accommodate this increase and continue to supply our customer with the quality of product, we have made some changes in the way we do business. We have made supplier changes, go to different size labels, different size and thickness of bags, changed the way we handle e-lids, and changed some processes.
>
> To ensure that we are paying our employees fairly, we are in the process of doing new time studies to accommodate these new changes. Although we don't expect major differences, some rates will change slightly. Time studies are expected to be completed by the end of the month, so any changes in rates will go into effect March 4, 2013.

30. Honda's specific production demands also determined which of UCO's Production Associates would be permitted to work on the line. As a result, in some instances, non-disabled individuals were placed on the line instead of individuals with disabilities, like Mr. Denoewer, in order to meet Honda's specific demands.

8

31. Mr. Denoewer timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on October 5, 2016, alleging, *inter alia*, discriminatory compensation practices by UCO.

32. By Notice dated May 2, 2017, the EEOC issued a right to sue letter. Mr. Denoewer, through his next friend, Mrs. Basil, timely filed his Complaint in this case on July 28, 2017.

33. In relegating Plaintiff to lower-paid, less fulfilling, and dull work, Defendants acted in conscious disregard of his statutory rights in a way that was highly probable to cause him substantial harm.

## CAUSES OF ACTION

### COUNT I
### Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)
### (Against UCO)

34. Plaintiff incorporates all of the foregoing allegations as if fully stated herein.

35. Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA's prohibition includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." *Id.* at § 12112(b)(1).

36. By relegating Mr. Denoewer to work on the tables and by denying him the opportunity to work on the line or the shredding machine without an adequate individualized inquiry into his skills and abilities, but based on general assumptions about the limitations

9

imposed by his disability, UCO "limit[ed], segregate[ed], [and] classif[ied]" Mr. Denoewer for the duration of his employment at UCO on the basis of his disability in violation of the ADA. *Id.*

37. UCO's conduct "adversely affect[ed]" Mr. Denoewer's opportunities and status because workers on the line and at the shredding machine made at least minimum wage, while workers at the tables were paid a piece-rate, without the protection of having a wage floor equal to the minimum wage. Denying Mr. Denoewer the opportunity to work on the line and at the shredding machine also denied him the opportunity to develop new and marketable skills, and kept him unjustifiably segregated from non-disabled individuals since only individuals with disabilities worked on the tables.

38. UCO's conduct caused Mr. Denoewer substantial economic damages as measured by the difference between his actual rate of pay, and pay-related benefits, and the amounts earned and accrued by workers on the line and at the shredder. In addition, UCO is liable for the court costs, reasonable attorneys' fees, and expenses Mr. Denoewer has incurred in the prosecution of this matter.

## COUNT II
### Violation of Ohio Rev. Code Ann. § 4112.02(A)
### (Against UCO)

39. Plaintiff incorporates all of the foregoing allegations as if fully stated herein.

40. Ohio Rev. Code Ann. § 4112.02(A) also prohibits employers from discriminating on the basis of disability "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

41. By relegating Mr. Denoewer to work on the tables and by denying him the opportunity to work on the line or the shredding machine without an adequate individualized inquiry into his skills and abilities, but based on general assumptions about the limitations

10

imposed by his disability, UCO discriminated against Mr. Denoewer with respect to the "the terms, conditions, [and] privileges of [his] employment" by UCO on the basis of Mr. Denoewer's disability in violation of Ohio Rev. Code Ann. § 4112.02(A).

42. UCO's conduct adversely affected "the terms, conditions, [and] privileges of [Mr. Denoewer's] employment" because workers on the line and at the shredding machine made at least minimum wage, while workers at the tables were paid a piece-rate, without the protection of having a wage floor equal to the minimum wage. Denying Mr. Denoewer the opportunity to work on the line and at the shredding machine also denied him the opportunity to develop new and marketable skills, and kept him unjustifiably segregated from non-disabled individuals since only individuals with disabilities worked on the tables.

43. UCO's conduct caused Mr. Denoewer substantial economic damages as measured by the difference between his actual rate of pay, and pay-related benefits, and the amounts earned and accrued by workers on the line and at the shredder. In addition, pursuant to Ohio Rev. Code Ann. § 4112.99, UCO is liable for the court costs, reasonable attorneys' fees, and expenses Mr. Denoewer has incurred in the prosecution of this matter.

## COUNT III
### Violation of Ohio Rev. Code Ann. § 4112.02(J)
### (Against Honda)

44. Plaintiff incorporates all of the foregoing allegations as if fully stated herein.

45. Ohio Rev. Code Ann. § 4112.02(J) prohibits one from, *inter alia*, aiding and abetting any act prohibited by § 4112.02 including "discriminat[ing] against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code. Ann. § 4112.02(A).

11

46.     Honda aided and abetted UCO's discriminatory conduct by contracting with UCO to pay at, or above, minimum wage for some tasks performed by UCO's employees on its behalf, but not all. Honda also aided and abetted UCO's discriminatory conduct by setting its demands in such a way as to cause UCO to segregate and classify its workers on the basis of their disabilities.

47.     Honda's conduct in aiding and abetting UCO's discrimination caused Mr. Denoewer substantial economic damages as measured by the difference between his actual rate of pay, and pay-related benefits, and the amounts earned and accrued by workers on the line. In addition, pursuant to Ohio Rev. Code Ann. § 4112.99, Honda is liable for the court costs, reasonable attorneys' fees, and expenses Mr. Denoewer has incurred in the prosecution of this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare that UCO has violated the Americans with Disabilities Act, 42 U.S.C. § 12112, and Ohio Rev. Code Ann. § 4112.02, by denying Plaintiff the opportunity to work on the line without an adequate individualized inquiry into his skills and abilities and what, if any, accommodations he would need to do so;

B.     Declare that Honda violated Ohio Rev. Code Ann. §§ 4112.02(J) by aiding and abetting UCO's unlawful conduct;

C.     Enter a judgment against Defendants, jointly and severally, in favor of Plaintiff, based on Defendants' violations of the ADA and Ohio Rev. Code., in an amount equal to the difference between Plaintiff's actual rate of pay, and pay-related benefits, and the amounts earned and accrued by workers on the line and on the shredder;

    D.    Award Plaintiff pre- and post-judgment interest on all amounts owed as allowed by law, pursuant to 28 U.S.C. § 1961;

    E.    Award Plaintiff the reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5(k), and Ohio Rev. Code Ann. § 4112.99;

    F.    Grant Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By:    /s/ Regina Kline
Regina Kline (0812170152)
*(rkline@browngold.com)*
Kevin Docherty (1212110239)
*(kdocherty@browngold.com)*
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel (410) 962-1030
Fax (410) 385-0869

Marc Maurer (7912010007)
Attorney at Law
*(mmaurer@nfb.org)*
Baltimore, Maryland 21230
Tel (410) 659-9317
Fax (410) 685-5653

John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
Tel (614) 463-9790
Fax (614) 463-9780

*Attorneys for Plaintiff*