# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MICHAEL A. DENOEWER,**

    **Plaintiff,**

    v.                                                   Case No.: 2:17-CV-660
                                                          JUDGE GEORGE C. SMITH
                                                          Magistrate Judge Jolson

**UCO INDUSTRIES, INC.,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court upon Defendant Honda of America Manufacturing, Inc.'s Motion to Dismiss Count Three of Plaintiff's First Amended Complaint with prejudice for failure to state a claim upon which relief may be granted. (Doc. 33). The motion is fully briefed and ripe for disposition. For the following reasons, the Motion to Dismiss is **GRANTED**.

### I.     BACKGROUND

Plaintiff Michael A. Denoewer ("Plaintiff") is an adult individual with intellectual and developmental disabilities who is autistic, non-verbal, and epileptic. (*Id*. at ¶ 1). Plaintiff was employed as a production associate by Defendant UCO Industries, Inc. ("UCO") from July 2008 to December 2015. (*Id*.). UCO is a 501(c)(3) non-profit that exists to employ individuals with disabilities in an integrated setting where individuals with disabilities work alongside individuals without disabilities. (*Id*. at ¶ 2).

UCO employs more than 130 Production Associates, many of whom, including Plaintiff, are individuals being paid sub-minimum wages pursuant to a certificate issued under 29 U.S.C. § 214(c) by the United States Secretary of the Department of Labor. (*Id*. at ¶¶ 13–14). That

certificate is issued to allow an employer to pay lower than minimum wage related to productivity, "to prevent curtailment of opportunities for employment... of individuals ... whose earning or productive capacity is impaired by age physical or mental deficiency, or injury." 29 U.S.C. § 214(c).

Defendant Honda of America Manufacturing, Inc. ("Honda") is a for-profit Ohio corporation that maintains its principal place of business in Marysville, Ohio. (Doc. 27, First Amend. Compl., at ¶ 9). Honda contracts with UCO as a Tier 1 supplier for components to new vehicles. *(Id.)*. According to the Amended Complaint, due to UCO's role as a Tier 1 supplier, Honda closely monitors UCO's operations and did so during the time that Plaintiff was an employee of UCO. (*Id*. at ¶ 12).

As a Production Associate, Plaintiff completed light assembly work for UCO, and was principally responsible for unpacking and organizing parts of owner's manuals for new Honda vehicles in an area known as "the tables." (*Id*. at ¶ 18). Plaintiff was paid according to the number of Honda components he unpacked. *(Id.)*. In 2012, Plaintiff's average wage per hour after taxes was $1.74. (*Id.*). In 2013, it was $1.67 per hour. (*Id.*).

There were two other job assignments that Plaintiff alleges he was able eligible to perform. UCO employed individuals at an area called "the line," and also operated a document destruction (shredding) operation called "File 13." (*Id*. at ¶¶ 21–22). UCO paid the "line" and "File 13" workers at least minimum wage. (*Id.*).

Multiple individuals speaking on Plaintiff's behalf requested that he be given the opportunity to work in one of these positions and make minimum wage. (*Id*. at ¶ 24). Despite these requests, Plaintiff was never given the opportunity to work in either of these areas. (*Id*. at ¶ 25). Plaintiff further asserts that no one from UCO ever assessed his individual skills and

abilities to determine if he could perform either of these tasks. (*Id*. at ¶¶ 26–28). Instead, according to Plaintiff, UCO made these decisions based upon erroneous assumptions and stereotypes about the limitations imposed by his disability. (*Id*.).

Plaintiff alleges that UCO violated Ohio Revised Code § 4112.02(A) and Title I of the Americans with Disabilities Act when they wrongfully decided that he could not work on the line, or in document destruction. (*Id*. at ¶¶ 34–41). In his sole claim against Honda, Plaintiff alleges that Honda violated § 4112.02(J) in aiding and abetting UCO in this disability discrimination.

Plaintiff claims, "[o]n information and belief, UCO's contract with Honda determined how much Honda would pay for work performed by UCO's Production Associates—whether above or below minimum wage." (*Id*. at ¶ 19). The foundation of this belief is due to a statement by UCO's then-CEO to UCO Production Associates in a February 2013 letter:

> As you know, Honda has greatly increased the volume of their production during the course of the past year. In order to accommodate this increase and continue to supply our customer with the quality of product, we have made some changes in the way we do business. We have made supplier changes, go to different size labels, different size and thickness of bags, changed the way we handle e-lids, and changed some processes.
>
> To ensure that we are paying our employees fairly, we are in the process of doing new time studies to accommodate these new changes. Although we don't expect major differences, some rates will change slightly. Time studies are expected to be completed by the end of the month, so any changes in rates will go into effect March 4, 2013.

(*Id*. at ¶ 29).

Plaintiff's claim against Honda is premised on the belief that UCO would assign individuals to the line in order to meet Honda's production demands, and would sometimes place non-disabled individuals on the line, instead of disabled individuals like Plaintiff. (*Id.* at ¶ 30).

3

On July 28, 2017, Plaintiff, by and through his next friend, Tamara Basil, filed this lawsuit alleging disability discrimination against UCO, Union County Board of Development Disabilities, and Columbus Center for Human Services ("CCHS") (Doc. 4, Compl. PAGEID #30). On December 12, 2017, Plaintiff filed his First Amended Complaint that added Honda as a defendant. (Doc. 27, First Amend. Compl., PAGEID #107). Union County Board of Development Disabilities and CCHS were no longer named as defendants in Plaintiff's First Amended Complaint. (*Id*.). Honda now moves to dismiss Count III of the Amended Complaint, the only count asserted against Honda, for aiding and abetting UCO's alleged disability discrimination.

## II. STANDARD OF REVIEW

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to

threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Ohio Revised Code § 4112.02(J) provides that it is an unlawful discriminatory practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

Ohio courts generally define "aid" as "to assist" and "abet" as "to incite or encourage." *Hortsman v. Farris*, 132 Ohio App. 3d 514, 527 (2d Dist. 1999). Ohio's courts generally construe aiding and abetting as an intentional act. *Luke v. City of Cleveland*, No. 1:02-CV-1225, 2005 WL 2245187, at *8 (N.D. Ohio Aug. 22, 2005). "[O]ne is not an aider and abettor unless he knowingly does something which he ought not to do . . . which he assists or tends in some way to affect the doing of the thing which the law forbids." *State v. Stepp*, 117 Ohio App. 3d 561, 568 (4th Dist. 1997). Mere association with the principal is not enough to show cause for aiding and abetting. *Hortsman*, 132 Ohio App. 3d at 527; *see also Aetna Cas. & Sur. Co. v. Leahy Const. Co.*, 219 F.3d 519 (6th Cir. 2000) (noting that "aiding-abetting focuses on whether a defendant knowingly gave substantial assistance to someone who performed wrongful conduct . . . ."). To be held liable under § 4112.02, an individual defendant must be "involved in or actually [have] made the decision to [discriminate or] retaliate against [the employee]." *Oster v.*

5

*Huntington Bancshares Inc.*, 2:15-CV-2746, 2017 WL 2215462, at *22 (S.D. Ohio May 19, 2017) (Marbley, J.) (citing *Cummings v. Greater Cleveland Reg'l Transit Auth., et al.*, 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015)).

Although the case law interpreting § 4112.02(J) is scant, there is no precedent that would bar a finding that a third party aided and abetted the wrongful discrimination occurring at the hands of a business partner. Indeed, the court in *Cummings* denied a motion to dismiss for failure to state a claim where the plaintiff pleaded in her complaint that the defendants were involved in or actually made the decision to retaliate against her. *Cummings*, 88 F. Supp. 3d at 820. Because the plaintiff had alleged that her constitutional rights were violated "at the direction and/or with the knowledge and consent of Defendants," she had satisfied her initial burden to at least plead that the individual defendants were somehow directly involved in the allegedly discriminatory conduct. *Id*.

Similarly, in *Angel v. United Paperworkers Intern. Union Local 1967*, this Court refused to dismiss a complaint alleging that the defendant could be held liable under § 4112.02(J) even though they were a non-signatory to a bargaining agreement that had a discriminatory impact. No. C-1-01-467, 2003 WL 21910753, at *15 (S.D. Ohio March 10, 2003). Although a non-signatory, the defendant could have been held liable for aiding and abetting where they had been involved in the formation of a bargaining agreement alleged to have adversely impacted certain plaintiffs disproportionately on the basis of age. *Id*.

However, in the present case, Plaintiff has failed to allege any facts that show that UCO has violated his rights at the direction and/or with the knowledge and consent of Honda. The present facts, construed in a light most favorable to Plaintiff, do not raise a plausible inference of misconduct on the part of Honda. Plaintiff has failed to allege anything more than mere

conclusory allegations that Honda has aided and abetted UCO in their purported discriminatory conduct.

In Counts I and II of Plaintiff's Amended Complaint, Plaintiff alleges that he has been wrongfully relegated to lower-paying jobs due to his disability. Further, Plaintiff alleges that he has been denied a higher-paying position without an adequate individualized inquiry into his skills and abilities. Rather, UCO has based his assignment on general assumptions about his limitations.

Count III of Plaintiff's Amended Complaint claims that Honda is liable for aiding and abetting UCO in these discriminatory actions. The only facts that Plaintiff puts forward to support this allegation is the close relationship that UCO and Honda share. However, mere association with the principal is not enough to show cause for aiding and abetting. *Hortsman*, 132 Ohio App. 3d at 527. The Amended Complaint only alleges that UCO has taken wrongful actions against Plaintiff. Plaintiff does not allege that Honda was involved in or actually made the decision to discriminate against him. Nor has Plaintiff alleged that Honda has taken any affirmative act to incite or encourage UCO in making these employment decisions.

Although Plaintiff is correct that a party can be held liable under § 4112.02(J) as a party to a discriminatory agreement, this is not such a case. The alleged discriminatory actions against Plaintiff are pleaded as individual employment decisions made by UCO. The implication that by negotiating for lower prices with their supplier, Honda is somehow responsible for an employment action taken by UCO does not fall within the interpretation given by courts to § 4112.02(J). Further, there are no facts in the record to show that Honda knowingly entered into any discriminatory agreement with Plaintiff. In fact, even if Honda knew that Plaintiff had been receiving a sub-minimum wage, this agreement would be protected under 29 U.S.C. § 214(c).

7

Any decision to pay Plaintiff under this statute, or to promote him to work on the line for a higher wage would be the decision of UCO.

Nor can Plaintiff salvage his aiding and abetting claim by construing Honda's lack of involvement as a "conscious avoidance" or "ostrich defense." Plaintiff asserts in his opposition brief that "Honda's claim that it is an 'unknowing customer' of UCO is a fact-specific defense that does not support dismissal" and requests deferment of dismissal pending discovery on this issue. (Doc. 34, Pl.'s Resp. at 9). Plaintiff attempts to support his arguments with a publicly-available 2017 Sustainability Report "that describes the active role that Honda plays in its suppliers' operations." (*Id.* at 10). But in considering a motion to dismiss under Rule 12(b)(6), the Court is limited to Plaintiff's allegations in the Amended Complaint and may not consider outside evidence. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). As Plaintiff has not alleged in the Amended Complaint that Honda intentionally avoided acquiring knowledge of UCO's allegedly discriminatory practices, no discovery is necessary and dismissal is appropriate.

Due to the fact that Plaintiff's Amended Complaint fails to allege that Honda was involved in, or actually made the decision to retaliate against him, Honda's Motion to Dismiss Count Three of Plaintiff's First Amended Complaint is **GRANTED**.

## IV. CONCLUSION

Based on the foregoing reasons, Honda's Motion to Dismiss Count Three of Plaintiff's First Amended Complaint is **GRANTED**. The Clerk shall remove Document 33 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                       */s/ George C. Smith*
                                       **GEORGE C. SMITH, JUDGE**
                                       **UNITED STATES DISTRICT COURT**