**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL A. DENOEWER,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:17-CV-660** |
| | : | |
| **v.** | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| | : | |
| **UNION COUNTY INDUSTRIES,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff and Defendant's cross-motions for summary judgment. (ECF No. 80, No. 81). The parties have also submitted two additional motions, including a Motion to Amend Answer by Defendant (ECF No. 60) and a Motion to Strike by Plaintiff (ECF No. 85). The summary judgment hearing took place February 24, 2020 at 12:30 p.m. (ECF No. 54). For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED in part AND DENIED in part**. Plaintiff's Motion for Summary Judgment is **DENIED**. This Court **GRANTS** Defendant's Motion to Amend Answer and **DENIES as MOOT** Plaintiff's Motion to Strike.

## I. BACKGROUND

Plaintiff, Michael A. Denoewer, alleges that his former employer, UCO Industries, Inc. ("UCO") discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and Ohio Rev. Code § 4112.02(A).

Mr. Denoewer is an adult with intellectual and developmental disabilities who is autistic, non-verbal, and epileptic. (ECF No. 48-1 at 1). He worked at UCO from July 2008 until December

2015. *Id.* UCO is a non-profit organization that exists to provide job opportunities to developmentally disabled persons. (ECF No. 80 at 1). According to UCO, it has never refused to hire a developmentally disabled person and has never terminated any employee, regardless of his or her performance. *Id.*

Until 2013, UCO operated as a "sheltered workshop"—where disabled individuals can work at their own pace without fear of termination for failure to meet performance goals— for individuals receiving services from the Union County Board of Developmental Disabilities ("UCBDD"). In October 2013, UCO was privatized, but continued a close partnership with the UCBDD. UCO hires individuals to work for its varied customer base, including Honda of America, who was dismissed from this case on April 18, 2018. (ECF No. 36).

Plaintiff was hired as a Production Associate to complete light assembly work for UCO and was principally responsible for unpacking and organizing parts of owner's manuals for new Honda vehicles in an area known as "the tables." (ECF No. 48-1 at 5). Plaintiff was paid according to the number of Honda components he unpacked. *Id.* In 2012, Plaintiff's average wage per hour after taxes was $1.74. *Id.* In 2013, it was $1.67 per hour. *Id.* There were two other job assignments that Plaintiff alleges he was eligible to perform. UCO employed individuals at a production line area called "the line," and also operated a document destruction (shredding) operation called "File 13." *Id.* at 5-6. UCO paid the "line" and "File 13" workers at least minimum wage. *Id.*

UCO has approximately 130 employees and many of them work at "sub-minimum" wages pursuant to a certificate issued under 29 U.S.C. § 214(c) ("Section 14(c) Certificate"). (ECF No. 80 at 9). Employees working the tables are paid on a "piece-rate basis" with a wage floor of $1.50/hour for this work. *Id.* UCO states that it could pay all of its qualifying developmentally

disabled employees sub-minimum wages pursuant to its Section 14(c) certificate, but voluntarily chooses to pay minimum wage for its production line and File 13 positions. *Id.* at 10.

UCO states that it assigns employees to the pre-production tables area for assessment and evaluation and has introduced simulations for new employees to try to help UCO determine their abilities. (ECF No. 80 at 11). Employees who "demonstrate proficiency at the tables" are frequently moved between the tables and the production line, but not File 13. *Id.* UCO also hires contingent workers in order to supplement production line and tables staff where there is a shortage of staff. These contingent workers are not disabled and work only part time. (ECF No. 90 at 13-14). UCO notes that it began this practice in 2012 in "order to keep work flowing into the company to enable it to fulfill its mission of providing employment opportunities for developmentally disabled employees." *Id.*

Multiple individuals speaking on Plaintiff's behalf requested that he be given the opportunity to work on the production line or File 13 so he could make minimum wage. (ECF No. 48-1 a 6-7). Despite these requests, Plaintiff was never given the opportunity to work in either of these areas. *Id.* Plaintiff further asserts that no one from UCO ever assessed his individual skills and abilities to determine if he could perform either of these tasks. *Id.* at 7. Instead, according to Plaintiff, UCO made these decisions based upon erroneous assumptions and stereotypes about the limitations imposed by his disability. *Id.*

Plaintiff and Defendant have each filed a Motion for Summary Judgment (ECF No. 80, No. 81). The parties have also submitted various additional motions, including a Motion to Amend Answer by Defendant (ECF No. 60) and a Motion to Strike by Plaintiff (ECF No. 85). These motions are ripe for review.

## II.    STANDARD OF REVIEW

A motion for summary judgment is governed by the requirements of Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The party seeking summary judgment bears the initial burden of presenting law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If the moving party satisfies this initial burden, then the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th

Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position is not enough to survive summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

### III.    LAW & ANALYSIS

### A.  CROSS MOTIONS FOR SUMMARY JUDGEMENT

The Americans with Disabilities Act ("ADA") prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination against a qualified individual is defined to include acts:

> (1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee"
>
> …
>
> (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;
>
> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee,

unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. . .

42 U.S.C.A. § 12112(b)(1)-(5). Since "analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02[,]" the Court will evaluate the Ohio claims "concurrently and under the same standards as claims brought under the ADA." *Nilles v. Givaudan Flavors Corp.*, 521 Fed. Appx. 364, 367-68 (6th Cir. 2013).

Plaintiff and Defendant have each filed a motion for summary judgment arguing that the facts as developed necessitate an order granting each judgment as a matter of law. But that is just about all that Plaintiff and Defendant agree on. They disagree as to what constitutes undisputed fact, the applicable legal standards, and what claims and defenses either can pursue. As indicated below, the record shows a genuine dispute of material fact as to Plaintiff's claims, indicating that the issues are better suited for resolution at trial.

The first disagreement between Plaintiff and Defendant relates to the appropriate legal standard to use in evaluating Plaintiff's claims. Defendant urges this Court to use the *McDonnell-Douglas* burden shifting analysis for claims of disability discrimination based on indirect evidence. (ECF No. 80 at 21). Plaintiff argues that it has introduced evidence of direct discrimination, necessitating the use of a different standard. (ECF No. 86 at 11-12).

A plaintiff can bring a disability discrimination claim using either direct or indirect evidence, but the type of evidence presented determines the analytical framework to be used. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). A plaintiff only needs to prove her case using one of the methods as the "direct evidence and circumstantial evidence paths are mutually exclusive." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004). Where a plaintiff presents direct evidence that the employer "acknowledges that it relied upon the plaintiff's handicap in making its employment decision ... [t]he *McDonnell Douglas* burden

shifting approach is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant ... and the plaintiff has direct evidence of discrimination on the basis of his or her disability." *Ferrari*, 826 F.3d at 892.

Plaintiff makes both a failure to accommodate claim as well as a typical employment discrimination claim. He argues that Defendant's policies resulted in limiting and segregating him in a way that adversely affected his opportunities, in denying him equal work and pay on account of his disability, and in a failure to make reasonable accommodations to his known disabilities. (ECF No. 81 at 35-54). Claims that are made relating to an employer's failure to offer a reasonable accommodation "necessarily involve direct evidence" since "no inference is necessary to conclude that the employee has proven this form of discrimination." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *see also Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 435 (6th Cir. 2018). Thus, Plaintiff's failure to accommodate claims necessarily involve direct evidence. Plaintiff's other claim deals with Defendant's admitted policy of evaluating the qualifications of its disabled individuals differently by requiring only its disabled employees to prove themselves in the tables area before moving to the production line. (ECF No. 86 at 3). Such a claim also necessarily involves direct evidence since the policy treats disabled and non-disabled employees differently on its face. *See e.g., Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (noting that a "facially discriminatory employment policy . . . is direct evidence of discriminatory intent.").

## 1. <u>Employment Discrimination</u>

Once direct evidence of discrimination is shown, the following framework is used for analyzing plaintiff's claim of employment discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Kleiber*, 485 F.3d at 869 (6th Cir. 2007) (citing *Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 452 (6th Cir.))

Defendant does not dispute that Plaintiff is disabled, but it does dispute that Plaintiff (a) suffered any adverse employment action and (b) was qualified for the production line and File 13 positions with or without an accommodation.

### a. Adverse Employment Action

Defendant argues that Plaintiff suffered no adverse employment action since Plaintiff voluntarily quit his job. (ECF No. 80 at 26). Moreover, Defendant argues that: Plaintiff was not prohibited from working on the production line; even if he was prohibited such an action would be a lateral transfer and not a demotion; and no vacancy ever existed in File 13 while Plaintiff worked there. *Id*. at 26-28.

First, Defendant argues that Plaintiff was not prohibited from working on the production line and was given an opportunity to work there but was unable to perform. *Id*. at 26. Plaintiff disputes that Defendant ever gave him an opportunity to work on the line, pointing out that this assertion is based on the testimony of only one employee who did not recall the date when Mr. Denoewer worked on the line and stated that Plaintiff's work there lasted only minutes. (ECF No. 86 at 6-7). Furthermore, Plaintiff points out that none of his payroll records suggests that he was ever permitted to work on the production line. (ECF No. 86 at 6-7). Given the conflicting evidence

presented by both parties, it is evident that there is a genuine issue of material fact as to whether Mr. Denoewer ever worked on the production line.

Second, Plaintiff argues that Defendant assigned Mr. Denoewer to working on "the lowest-paid and most menial tasks in its workshop without first individually assessing his skills and abilities." (ECF No. 86 at 12). Plaintiff argues that work on the production line and in File 13 was paid on a minimum wage basis, whereas work on the tables, where Mr. Denoewer was assigned, was assigned on a per piece basis, thus constituting an adverse action. *Id*. at 23-26. Plaintiff also cites to evidence that Mr. Denoewer never earned minimum wage when working on the tables (ECF No. 48-1 at 5) and refers to Defendant's own promotional videos which indicate that the production line was the premier place to work in the UCO. (ECF No. 86 at 25). Defendant admits that work on the production line and in File 13 was paid on a minimum wage basis but argues that work on the tables would still be a lateral transfer because there is the possibility of earning more than minimum wage at the tables. (ECF No. 80 at 9). Defendant asserts that many employees preferred work on the tables because they could earn more than minimum wage there. *Id*. Based on conflicting evidence regarding pay rates and Defendant's own characterization of work on the production line, a genuine issue of material fact exists as to whether being prohibited from working on the production line constituted an adverse employment action.

Defendant also argues that no vacancy existed in File 13 while Plaintiff worked there and thus Defendant took no adverse action against Plaintiff by not allowing him to work there. Plaintiff does not dispute that no vacancy existed in File 13 but argues that the lack of a vacancy is immaterial since Plaintiff's claim is "not that Defendant failed to reassign him to an open position, it is that Defendant denied him the opportunity to fulfill responsibilities that were a part of his position as a production associate." (ECF No. 86 at 25-26 n. 6). Even so, there is no evidence that

employees were rotated between File 13 and the other areas, although employees were "often moved back and forth between tables and the [production] line." (ECF No. 80 at 27). As the Sixth Circuit has previously determined, an employer does not have a duty to "create new jobs [or] displace existing employees from their positions ... in order to accommodate a disabled individual." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Here, too, Defendant was under no obligation to displace existing employees from File 13 to accommodate Plaintiff's desire to participate in paper shredding. Therefore, Plaintiff has failed to meet his burden of showing that he was denied an opportunity to fulfill responsibilities that were a part of his position since UCO was under no obligation to displace the employees in File 13 and since no vacancy existed in File 13. Accordingly, Defendant is entitled to summary judgment insofar as Plaintiff's claims relate to the File 13 position.

Both parties have submitted conflicting evidence indicating that there is a genuine issue of material fact as to whether Plaintiff suffered an adverse employment action when prevented from working on the production line pursuant to Defendant's discriminatory policies. Thus, summary judgment is inappropriate for this claim as it relates to work on the production line.

### b. Was Plaintiff Qualified?

Plaintiff and Defendant also dispute whether Plaintiff was qualified for a position on the line[1] with or without an accommodation. To overcome summary judgment, a plaintiff must identify the specific job he seeks and demonstrate he is qualified for it. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007). An individual is qualified if he or she can, "with or without reasonable accommodation, . . . perform the essential functions of the employment

_____

[1] Plaintiff and Defendant also dispute whether Mr. Denoewer was qualified for a position on File 13, however, since there is no dispute that there was no vacancy in File 13 (and thus no adverse employment action with regards to preventing Plaintiff from working there), this Court declines to determine whether Plaintiff was qualified for that position.

position that such individual holds or desires." 42 U.S.C. § 12111(8). To determine what the essential functions of a job are, courts should consider any "written descriptions of the job" as well as the "employer's judgment as to what functions of a job are essential." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 985 (6th Cir. 2011).

In determining whether a Plaintiff can perform the essential functions of a job, the Plaintiff's "uncorroborated belief in his physical prowess is not enough to counter affirmative evidence to the contrary." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 986 (6th Cir. 2011) (internal citations omitted). While the ADA does require employers to accommodate individuals with disabilities, employers are not required "to accommodate individuals by shifting an essential job function onto others." *Johnson*, 443 F. App'x at 986 (6th Cir. 2011) (determining that plaintiff was not qualified to perform essential function of job where she required accommodation in form of an additional person who could step in to do the job of a single employee).

Plaintiff argues that he was hired as a production associate and that there were only two qualifications for that position: (1) that the person have a disability; and (2) that the individual be referred by the UCBDD to UCO as an employee so he/she can receive "vocational training opportunities, accommodations, and supports in exchange for one's labor." (ECF No 81 at 16). Plaintiff argues that he met both of those qualifications and was therefore deemed qualified for the production associate position.

Defendant argues that Plaintiff was not qualified to work on the line because any changes in his daily routine would result in "aggressive" and "violent" behavior. (ECF No. 80 at 22). According to Defendant, UCO never turns away any disabled workers and work on the production line "moves much faster and is more complex than work at the tables" and is also "noisier and

imposes more external stimulus than the tables." (ECF No. 80 at 3-4). Defendant adds that its decision to keep Plaintiff at the tables was based on his behavior, performance, and the terms of his Individual Plan ("IP"). *Id*. at 24. Defendant states that Plaintiff's IP indicated that he should not be subjected to changes in his daily routine or overstimulation and should be kept out of harm's way. *Id*. at 24. UCO states that it attempted to work within the guidelines of Plaintiff's IP by encouraging him to try new tasks without violating the IP's warnings about overstimulation. *Id*. Defendant also says that its argument that Plaintiff was not qualified to work on the line is corroborated by Plaintiff's negative response to being put on a trial-run on the production line. *Id*. at 26-27.

Plaintiff points to expert testimony indicating that with proper accommodations, he would be qualified to work on the production line as well as testimony indicating that the inability of a disabled individual to conduct a more basic task is not dispositive of the disabled individual's ability to perform more complex tasks. (ECF No. 81 at 26-35, 40-41). Plaintiff's expert testimony supports his argument that with appropriate accommodations he would be able to perform multisequence tasks. *Id.* at 27-28.

When determining whether an individual's disability disqualifies him from a particular position, an employer is required to conduct an "individualized inquiry." *Keith v. Cty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). This requirement flows from the ADA's underlying objective to prevent discrimination against disabled individuals on the basis of "unfounded fear, prejudice, ignorance, or mythologies" and to require employers to "act, not based on stereotypes and generalizations about a disability, but based on the actual disability and the effect that disability has on the particular individual's ability to perform the job." *Id.* As part of this individualized inquiry, the employer is required to consider "the applicant's personal

characteristics, his actual medical condition, and the effect, if any, the condition may have on his ability to perform the job in question." *Id*. See also *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000).

Here, Defendant argues that an individualized inquiry is not legally required since it did not base its decision to deny Mr. Denoewer production line work on his disability. Even if an individualized inquiry is required, Defendant argues that UCO did conduct it constantly by "training [Plaintiff] on a variety of techniques, written processes for the job, pictorial representations of the job, modeling the job and coaching regarding how to perform the job." (ECF No. 90 at 3).

The individualized inquiry requirement comes into play when an employer makes a determination as to "whether an employee's disability or other condition disqualifies him from a particular position." *Holiday*, 206 F.3d at 643. Thus, the employer is required to have knowledge of the Plaintiff's disability. Defendant, however, does not contest that its employees knew that Mr. Denoewer was disabled, only that UCO's employees in charge of making Plaintiff's job assignments "did not know the precise nature of, or extent of, Plaintiff's disabilities." (ECF No. 80 at 25-26). Therefore, Defendant and its employees knew Plaintiff was disabled and were required to conduct an individualized inquiry to determine whether Plaintiff was qualified for work on the line.

An employer is not entitled to rely on cursory examinations in deciding that an applicant is not qualified for a position. In *Keith*, the Sixth Circuit determined that a genuine issue of material fact existed as to whether the county had conducted an adequate individualized inquiry before determining that a deaf applicant was not qualified to be a lifeguard. *Keith*, 703 F.3d at 924 (6th Cir. 2013). In *Keith*, the applicant's job offer was conditioned on passing a medical examination

by a county-appointed physician. When the county-appointed physician conducted his physical, however, he made a "cursory," instantaneous decision that plaintiff was not qualified because he was deaf, making no "effort to determine whether, despite his deafness, Keith could nonetheless perform the essential functions of the position, either with or without reasonable accommodation." *Id.*

Similarly, in *Holiday*, the Sixth Circuit held that genuine issues of material fact existed as to whether the City of Chattanooga conducted an adequate individualized inquiry where it relied on a physician's cursory medical opinion that the applicant was not "fit for police work." 206 F.3d at 644. The reason for the physician's decision was the applicant's HIV positive status and there was no evidence the physician "attempted to determine whether Holiday actually experienced fatigue, sluggishness, shortness of breath or any other symptom of physical weakness or lack of endurance." *Id.*

Plaintiff and Defendant dispute whether the Defendant conducted an individualized inquiry and whether the individualized inquiry conducted by Defendant was sufficient. Plaintiff argues that Defendant did not conduct any individualized inquiry and any assessment it allegedly conducted by placing Mr. Denoewer on the line momentarily was insufficient since Defendant's supervisors never communicated or knew how to communicate with Plaintiff. (ECF No. 86 at 26). Plaintiff presents the testimony of its expert, Dr. Mills, as evidence that Plaintiff was qualified for a position on the line and that Defendant failed to conduct an adequate individualized assessment to make a determination as to Plaintiff's qualifications. (ECF No. 81 at 26-27; ECF No. 86 at 20). Defendant argues that it continually individually assessed Plaintiff by assigning him tasks of differing difficulty and assessing how he responded to and completed those tasks. (ECF No. 90 at 3). Defendant argues that the law does not require UCO to conduct an individualized inquiry that

conforms to the standards outlined by Plaintiff's expert, only that it conduct an individualized inquiry based on Plaintiff's actual abilities. *Id.* at 3-4.

While Defendant's alleged individualized inquiry does appear to be based on Plaintiff's actual behavior and his responses to assigned tasks, and not on "stereotypes or generalizations," Plaintiff has presented equally compelling evidence that Defendant's inquiry was inadequate, and that Mr. Denoewer was qualified for the position. Where there are unresolved questions of material fact regarding the adequacy of an individual inquiry and the defendant's reliance on inadequate examinations in making employment decision, Courts find that summary judgment is inappropriate. *See Anderson v. Gen. Motors, LLC*, 45 F. Supp. 3d 662, 674 (E.D. Mich. 2014) (summarizing similar cases and finding that summary judgment on adequacy of individualized inquiry was inappropriate where there were unresolved questions of material fact regarding adequacy of examinations, medical records available to examiner, and other issues). Accordingly, summary judgment is inappropriate here since there is conflicting evidence on whether Defendant actually conducted an individualized inquiry and the adequacy of the inquiry conducted.

! Defendant also argues that Plaintiff's violent and aggressive behavior disqualifies him from working on the line. (ECF No. 90 at 7). Plaintiff contests that his behavior was disruptive or violent and argues that any behavior that Defendant attempts to characterize as "violent" or "aggressive" was actually Mr. Denoewer's attempt to communicate protests and a desire to work in a different position. (ECF No. 86 at 21-22).

While the ADA protects qualified disabled employees, the "ADA''s duty to accommodate does not run" in favor of an employee who threatens or commits violent acts since those employees are not considered qualified for the position. *Green v. Burton Rubber Processing, Inc.*, 30 F. App'x 466, 471 (6th Cir. 2002) (holding that employee's "threats of violence threatened the safety

of [defendant's] employees; that when he made those threats, [plaintiff] disqualified himself from his job . . . and from any protection under the ADA."). The Sixth Circuit has also determined that an employer is permitted to fire an employee for "egregious or criminal conduct" even where that conduct is due to an underlying disability. *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 739 (6th Cir. 2015) (internal quotation marks omitted). In *Yarberry*, an employer terminated an employee who violated company policy by entering the store after hours, opening a safe, roaming around the store and then leaving the store without setting off an alarm. The employee suffered from bipolar disorder and alleged that his conduct was due to his disability. The Sixth Circuit analyzed E.E.O.C enforcement guidance and determined that employers "have latitude to discipline employees for threats of violence, stealing, or destruction of property," even where that conduct is due to an underlying disability. *Id.* at 739.

Plaintiff presents evidence from an expert witness, Dr. Calculator, indicating that what Defendant characterizes as "violent" behavior is actually "purposeful and communicative behavior" to express Plaintiff's displeasure with work at the tables. Plaintiff argues that this "supposed misbehavior" began years after Mr. Denoewer first started at UCO and was relegated to the tables. (ECF No. 86 at 22-23). Furthermore, Plaintiff argues that Mr. Denoewer was never put on "work refusal status," a status given to employees whose behaviors were disruptive. (ECF No. 86 at 8-9). Defendant's work refusal status policy requires that a disruptive employee be removed from the floor for the day and the employee's parents called to pick up the employee. *Id.* at 9. Defendant counters that it has presented numerous records documenting Plaintiff's "violent outbursts," that Plaintiff engaged in "acts of head-butting, grabbing others by the throat and biting," that there is ample testimony that Defendant moved Plaintiff to jobs he preferred and redirected his behavior instead of putting him on work refusal status. (ECF No. 90 at 7). Based on

the evidence presented by the parties, a genuine issue of material fact exists as to whether Plaintiff conducted himself in a violent and threatening manner that violated Defendant's policies and that disqualified Plaintiff from work on the production line.

The evidence brought forward by both parties reveals a genuine issue of material fact as to whether Plaintiff was qualified to work on the line with reasonable accommodations. Accordingly, summary judgment is inappropriate on this issue.

### 2.  Failure to Accommodate

#### a.  *Failure to Accommodate Claims Pled with Specificity*

As a threshold matter, Defendant argues Plaintiff's failure to accommodate claims should not be permitted since Plaintiff did not plead those claims with specificity in his complaint and since failure to accommodate claims have different elements and analytical frameworks. (ECF No. 88 at 32-33). First, the elements of both discrimination and failure to accommodate claims are substantially similar. The primary difference between the two claims is that with a discrimination claim a plaintiff is required to show an adverse employment action whereas with failure to accommodate claims the adverse employment action that must be proven is the failure to accommodate. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019) (noting that failing to make a reasonable accommodation falls within the ADA's definition of "discrimination," meaning an employer's failure to offer a reasonable accommodation necessarily involves an adverse action) (internal quotation marks omitted) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007))!

Furthermore, at the pleading stage, a Plaintiff is not required to "plead facts establishing the prima facie case of discrimination" but is required to show he "was disabled or regarded as disabled and that [he] was otherwise qualified for a position." *Morgan v. St. Francis Hosp.*, No.

19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). In *Morgan*, the Sixth Circuit reversed a district court order dismissing plaintiff's failure to accommodate and disability discrimination claims and determined that plaintiff had adequately stated a claim under the ADA for *both* failure to accommodate and discriminatory termination. The *Morgan* plaintiff checked boxes on the form complaint indicating "failure to accommodate" and indicated that defendant failed to provide an accommodation. *Id.* at *2.

Here, in paragraph 26 of the third amended complaint, Plaintiff pleads that "Mr. Denoewer was prohibited from working on the line even though no one from UCO adequately assessed his individual skills and abilities to determine whether he could perform the tasks on the line, with or without reasonable accommodations, and if the latter, what accommodations he would need." (ECF No. 48-1 at 7). That paragraph, in addition to several others referencing that Mr. Denoewer was qualified to work on the line "with or without accommodation" are enough to "give the defendant fair notice of what [Plaintiff's] claim is and the grounds upon which it rests." (ECF No. 48-1 at 6- 8); *Morgan*, 2019 WL 5432041 at *1. Furthermore, as this Court and the Supreme Court have previously determined, a Plaintiff is not required to make out a prima facie case using either the direct evidence or *McDonnell Douglas* standards at the pleading stage where the complaint sets "forth the details leading to" the adverse employment action and "provide[s] the defendant with fair notice of the plaintiff's claims and his bases for asserting them." *Witte v. Rippe & Kingston Sys.*, Inc., 358 F. Supp. 2d 658, 664 (S.D. Ohio 2005) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)) (denying defendant's motion to dismiss on the basis that plaintiff failed to adequately plead the elements of disability discrimination and failure to accommodate claims

using either a direct and indirect standard). Accordingly, Plaintiff's failure to accommodate claims were adequately pled in the third amended complaint.

### b. Merits

Defendant and Plaintiff also dispute whether Defendant failed to accommodate Plaintiff's disability. The framework for failure to accommodate claims is similar to the framework for other employment discrimination claims, but plaintiffs do not need to "prove that they suffered an adverse employment action separate from the failure of the employer to reasonably accommodate the employee." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019). The plaintiff must show:

> (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. . . . As part of this prima facie case, a plaintiff "bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable."

*Hunt v. Monro Muffler Brake, Inc.*, 769 F. App'x 253, 258 (6th Cir. 2019) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007)) (internal citations omitted).

A plaintiff bringing a failure to accommodate claim bears the initial burden of proposing or requesting an accommodation for his or her disability. *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014). Once that request is made, the employer's duty to engage in an "interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations" is triggered. *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84 (6th Cir. 2012). There is no bright line rule for when an employee's request for accommodation is "sufficiently clear to constitute a request for an accommodation." *Judge*, 592 F. App'x at 407. While employees do not have to "use the magic

words 'accommodation' or even 'disability,'" they do have to make clear that their request for accommodation is made on account of their disability. *Id*. Employers are not "not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.*

Plaintiff argues that Defendant's duty to assess and accommodate Mr. Denoewer was triggered by the obviousness of Mr. Denoewer's disability, particularly since Mr. Denoewer is a non-verbal individual with autism. Plaintiff presents the testimony of two expert witness, Dr. Mills and Dr. Calculator, who testified that the UCO did not conduct an individualized inquiry to assess how to accommodate Mr. Denoewer's disabilities including training Defendant's staff in the proper method for communicating with Mr. Denoewer. (ECF No. 81 at 30-34).

Defendant argues that Plaintiff has the initial burden of proposing a reasonable accommodation and that there is no evidence that Plaintiff asked for any specific accommodation or that UCO denied him an accommodation. (ECF No. 88 at 36). Defendant adds that it did, in fact, conduct an individualized inquiry into Mr. Denoewer's abilities over a number of years during the course of his employment at UCO. (ECF No. 90 at 3).

The Sixth Circuit has not yet determined whether there are instances when an employer's knowledge of a plaintiff's disability triggers a duty to accommodate absent a formal request. Nonetheless, lower courts in this Circuit as well as courts in the Seventh and Second Circuits do not require an express request from an individual who has a known mental disability that prevents or impairs his or her ability to request an accommodation from the employer. *See Stanciel v. Donahoe*, 570 F. App'x 578, 584 (6th Cir. 2014) (declining to address the issue but not expressly rejecting three-part test used by lower courts in the Sixth Circuit for when a plaintiff's failure to request an accommodation is excused); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir.

2008) (holding "that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled."); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (noting that "employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help.").

Furthermore, in the context of disability discrimination claims, the Sixth Circuit has determined that the "onset of mental illness . . . presents distinct fact patterns regarding sufficiency of notice under the ADA, as the illness itself may prevent the individual from directly communicating his disability to his employer." *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 737 (6th Cir. 2015). In *Yarberry*, the Sixth Circuit excused the plaintiff's failure to notify his employer of his disability and determined that the employer had constructive knowledge that the plaintiff was suffering from a "serious mental illness" when it made its termination decision where Plaintiff engaged in strange behavior and was hospitalized. *Id.*

Here, Defendant does not dispute that it knew that Mr. Denoewer was disabled when it hired him nor that he had a condition that makes him unable to communicate verbally. (ECF No. 88 at 36). Defendant also knew that as a result of his disability, Mr. Denoewer would require support and accommodation, and "worked hand-in-hand, first with the Union County Board of Developmental Disabilities, and then with the Columbus Center for Human Services to determine what support Plaintiff needed to perform his job at UCO." *Id.* Accordingly, Defendant knew that Mr. Denoewer was disabled and required accommodation and Defendant's obligation to engage in an interactive process was triggered.

As discussed above in Section III.A.1.b), there remains a genuine dispute of material fact as to the adequacy of Defendant's individualized inquiry and their engagement in the interactive process for accommodating Mr. Denoewer. To determine an appropriate reasonable accommodation for an employee, the employer mas engage in the "interactive process" in good faith in order to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007).

Plaintiff argues that Defendant failed to conduct an individualized inquiry into his abilities to determine whether he could perform work on the production line with an accommodation. According to Plaintiff, Defendant limited him to work on the tables based on "untested assumptions about his capabilities, even though the essential functions of the production associate position included all of those subparts of the production process and work at the tables, the line, and File 13." (ECF No. 81 at 37). Plaintiff argues that Defendant's actions were taken pursuant to its discriminatory policy of requiring all of its disabled workers to "start on, and show a certain undefined level of proficiency in all tasks at, [sic] the tables . . . before being allowed to move to the line." (ECF No. 81 at 39).

Defendant cites deposition testimony and emails from its staff indicating that its staff communicated with Plaintiff using his assistive device and offered to attend speech therapy appointments with Plaintiff to facilitate communication with him. (ECF No. 88 at 37-38). Defendant argues it worked closely with the appropriate local agencies to accommodate Defendant's needs and that Defendant's mother participated in this process. *Id.* at 40. Defendant adds that UCO staff provided "assessment, behavioral redirection, job modification and scheduling modifications, as needed" in order to accommodate Plaintiff's disability, despite his not having

ever requested any accommodation. *Id*. at 38-39. Defendant argues that it was not Plaintiff's inability to communicate with staff that prevented him from progressing to work on the line, but his "slow pace and violent outbursts in response to change." *Id*. at 37-38.

Plaintiff asserts that summary judgement in support of its claims is appropriate arguing Defendant did not conduct an individualized assessment and relied on a third party's inadequate assessment of Plaintiff's disability and limitations similar to what was done in *Jones v. Nissan N. Am., Inc.*, 438 F. App'x 388 (6th Cir. 2011). In *Jones*, the Sixth Circuit determined that judgment as a matter of law was warranted on plaintiff's claims since there was no genuine dispute of material fact that defendant did not conduct an individualized inquiry. Plaintiff, Jones, was injured on the job and filed a worker's compensation claim. He was permitted to continue working and it was undisputed (and Nissan even agreed) that Jones was qualified and could perform the job. *Id*. at 399-401. Jones' worker's compensation claim was adjudicated in a chancery court and a chancellor determined that Nissan was required to pay a certain sum due to the work-related injury causing a permanent disability to Jones' arm. *Id*. at 391. Nissan then relied on the chancery court's worker's compensation order to argue that the chancery court order imposed an ability-related restriction on Jones that prevented him from working in his position. *Id.* at 400. Nissan did not dispute that it did not conduct an individualized inquiry, that no Nissan physician ever examined Jones or evaluated his medical file. *Id*. at 401. Nissan argued that it was bound by the chancery court's order imposing the medical restriction and was excused from engaging in an individualized inquiry to assess whether Plaintiff's alleged disability actually prevented him from doing his job. *Id*.

! Unlike in *Jones*, here, Defendant disputes Plaintiff's allegation that no individualized inquiry was conducted and present evidence indicating that it based its decision on Mr. Denoewer's

performance at the tables and on related tasks, not on a third party's assessment of Mr. Denoewer's disability. As discussed above in Section III.A.1.b), Defendant and Plaintiff each cite equally compelling evidence supporting their claims relating to whether Defendant adequately engaged in an interactive process to determine if Plaintiff's disability could be accommodated to ensure he could successfully work on the production line. Accordingly, a genuine issue of material fact exists as to whether Defendant failed to accommodate Plaintiff's disability.

### 3. Statute of Limitations

Defendant argues that Plaintiff's claims are barred by the statute of limitations since the alleged discriminatory acts occurred around July 8, 2008 and Plaintiff failed to bring suit until July 28, 2017. (ECF No. 80 at 38-39). Denoewer's last day of work with UCO was on November 23, 2015. *Id.* at 19. He filed a charge of discrimination with the EEOC on October 5, 2016 and received a right to sue letter on May 2, 2017. *Id.* at 38-39. He filed the instant suit on July 28, 2017. *Id.*

In Ohio, ADA claims must be filed with the EEOC within 300 days of the alleged discriminatory practice or act. *Gainor v. Worthington City Sch.*, No. 2:11-CV-561, 2013 WL 6587869, at *5 (S.D. Ohio Dec. 13, 2013). The clock starts running when the employee is aware or when they reasonably should have been aware of the allegedly unlawful practices. *Id.* Once the EEOC issues a right to sue letter, a plaintiff must file a civil action within ninety days. *Id.* Ohio employment discrimination claims are subject to a six-year statute of limitations. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 638 N.E.2d 991 (1994).

Defendant argues that because the allegedly discriminatory acts occurred when Plaintiff was first employed in July 2008, both his federal and state claims are barred by the respective limitations periods. (ECF No. 80 at 38-39). Plaintiff counters that since they are challenging

Defendant's continuing policies and practices, the statute of limitations is equitably tolled pursuant to the "continuing violation" exception. (ECF No. 86 at 27).

The continuing violation exception to the statute of limitations is available in two instances. The first type of continuing violation is where "there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation" despite the fact that some of the discriminatory acts took place outside the limitations period. *Hall v. The Scotts Co.*, No. 2:05-CV-732, 2005 WL 3499933, at \*4 (S.D. Ohio Dec. 21, 2005), *aff'd*, 211 F. App'x 361 (6th Cir. 2006). The second type arises where there is "a longstanding and demonstrable policy of discrimination." *Id.* A plaintiff seeking to invoke the continuing violation exception for a longstanding policy must show the policy was the employer's "standing operating procedure" and cannot rely solely on "[u]nrelated incidents of discrimination." *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007) (internal citations omitted).

Here, Plaintiff's claims are not barred by the statutes of limitation since Plaintiff challenges two of Defendant's policies. The first is Defendant's alleged policy of starting all disabled individuals on the line until they prove themselves (and not doing the same with non-disabled contingent employees). Plaintiff also challenges Defendant's alleged policy of not conducting formal individual assessments before making decisions as to where disabled individuals can work with or without accommodation. Accordingly, Plaintiff's claims are not time barred since he claims Defendant's policies affected him during the entirety of his time working at UCO.

### 4. **Punitive Damages**

Defendant also requests summary judgment on the issue of punitive damages, arguing that Plaintiff cannot point to any evidence that Defendant acted with malice or reckless indifference to Plaintiff. (ECF No. 80 at 36). Plaintiff argues that summary judgment is inappropriate on this issue,

because a reasonable trier of fact could find that Defendant acted with malice or reckless indifference to Mr. Denoewer's rights. (ECF No. 86 at 30).

For an employer to be liable for punitive damages, the employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 583 (6th Cir. 2014). An employer who is "simply unaware of the relevant federal prohibition or believe[s] that the discrimination is lawful [is] not subject to punitive damages liability." *Id.* (internal quotation marks omitted). A defendant can avoid punitive damages by showing that it engaged in good faith efforts to comply with the law. *Bates,* 767 F.3d at 583 (remanding for new trial on punitive damages where jury was not given opportunity to consider defendant's defense that it "tried to craft and carry out its policy in compliance with the law"). Additionally, there may be instances where an employer's intentional discrimination does not give rise punitive damages because the employer was under the belief that the discrimination it engages in is lawful. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 537 (1999).

Defendant argues that Plaintiff has not pointed to specific evidence that its employees knew they were required to provide Plaintiff with an individualized inquiry and that in any case the UCO staff made good faith efforts to assess each employee's capabilities when the employee was hired. (ECF No. 80 at 37-38). Plaintiff argues that the UCO exists to employ individuals with disabilities and that there is no reason why its employees would not be aware of the rights of its disabled employees and the duty not to violate them. Plaintiff adds that there is evidence in the record that Mr. Denoewer was denied work on the production line on the "basis of his disability and then [Defendant] intentionally perpetuated such discrimination in retaliation for his parents' strong advocacy on his behalf, which it viewed as being a nuisance." (ECF No. 86 at 32).

Both Plaintiff and Defendant have brought forward conflicting evidence indicating the existence of a genuine issue of material fact as to whether Defendant acted with malice or reckless indifference as to Plaintiff's rights pursuant to the ADA. Accordingly, Defendant's motion for summary judgment as to punitive damages is **DENIED**.

## B. ADDITIONAL MOTIONS

The parties have filed various other motions. Plaintiff has filed a Motion for Leave to File Fourth Amended Complaint and for Reconsideration of Order Dismissing Claims Against Honda (ECF No. 51). Briefing on this Motion was stayed pending resolution of this summary judgment order. (ECF No. 58).

### 1. <u>Motion to Amend Answer</u>

Defendant has also filed a Motion for Leave to Amend its Answer to Plaintiff's Third Amended Complaint to add the affirmative defense of direct threat. (ECF No. 60). Plaintiff opposes this motion arguing that Defendant's direct threat defense lacks any credibility and that permitting this amendment will prejudice Plaintiff. (ECF No. 87). Defendant's motion to amend was made after the deadline for discovery, just before the deadline for summary judgment briefing, and eight months after the Court's deadline for amending the pleadings set out in the Court's Scheduling Order. (ECF No. 87 at 4).

Fed. R. Civ. P. ("FRCP") 15(a) states that the Court should "freely give leave [to amend] when justice so requires." Denial of a motion to amend is proper "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Grocery Liquidators-Midwest, Inc. v. Fredette & Assocs., Inc.*, No. 1:08-CV-187, 2009 WL 10679175, at *1 (S.D. Ohio Feb. 23, 2009) (citing *Crawford v. Roane,* 53 F.3d 750, 753 (6th

Cir. 1995). Delay alone "is not a sufficient reason for denying leave," instead, the delay "must have resulted in prejudice to the party opposing the motion." *Tefft v. Seward*, 689 F.2d 637, 640 (6th Cir. 1982). Where a party requests leave to amend a pleading after the deadline set by a court's scheduling order, the party must show good cause pursuant to FRCP 16. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). And, while "prejudice to the defendant is not an express component of Rule 16," it is a relevant consideration. *Id.*

Defendant argues that good cause exists for granting this motion since the failure affirmatively to plead direct threat was an oversight and due to the importance of the affirmative defense, since one of the reasons animating Defendant's decision not to place Mr. Denoewer on the line or in File 13 was that he posed a threat to himself and others. (ECF No. 60 at 2). Plaintiff disputes that failing to include this affirmative defense is an oversight. (ECF No. 87).

Defendant's failure timely to plead the affirmative defense of direct threat is justified since there is a lack of clarity in this Circuit and others regarding which party maintains the burden of proving or disproving a claim that an employee was a direct threat. *See Wurzel v. Whirlpool Corp.*, 482 F. App'x 1, 12 n.14 (6th Cir. 2012) ("There is some question as to which party maintains the burden of proof. The Sixth Circuit has not yet ruled on this issue, and the courts of appeals decisions addressing it are not uniform."). In *Wurzel*, the Sixth Circuit observed this uncertainty amongst the circuits and noted that in some instances, the burden is placed on the Plaintiff to prove that he or she does not pose a threat pursuant to the "qualified individual" analysis, whereas in other instances, Defendant bears the burden of proving "direct threat" when it is asserted as a generalized "affirmative defense." *Id.* Due to this lack of clarity, Defendant may have believed that it was unnecessary affirmatively to plead "direct threat" since it would be Plaintiff's burden to prove that he was not a direct threat as part of the "qualified individual" analysis of his claims.

Plaintiff argues that it will be prejudiced by Defendant's amendment because the amendment would require reopening discovery to take additional depositions. (ECF No. 87). Defendant, however, cites the deposition testimony of two witnesses who spoke to the potential threat that would be posed by Mr. Denoewer in File 13 and notes that Plaintiff had equal opportunity to depose those individuals. (ECF No. 60 at 4-6). Furthermore, Plaintiff does not contest Defendant's assertion that Plaintiff has "already accounted for this defense by proposing to offer expert testimony that Plaintiff could safely operate the shredding machine." *Id*. at 2. Additionally, permitting Defendant to amend their answer to plead "direct threat" will not prejudice Plaintiff since this issue was an anticipated component of his claim that he was qualified to work on the production line. In fact, Plaintiff discusses "direct threat" in his own motion for summary judgment, offering Dr. Mill's testimony to address the proper method for determining whether a disabled individual constitutes a "direct threat." (ECF No. 81 at 59-60).

Regardless of where the burden of proving or disproving direct threat falls, both parties were required to address whether Plaintiff's actions constituted a "direct threat" that disqualified him from his position. Accordingly, Plaintiff will not be prejudiced by Defendant's pleading this affirmative defense. See *1704 Farmington, LLC v. City of Memphis*, No. 08-2171-STA, 2009 WL 2065337, at *3 (W.D. Tenn. July 10, 2009) (permitting defendant to amend answer to add affirmative defense after close of discovery and after deadline for dispositive motions and where trial was a month away noting that plaintiffs would not be prejudiced since they were not "denied opportunity to discover the same facts or depose the same witnesses as defendant"). Therefore, this Court **GRANTS** Defendant's motion to amend.

## 2. <u>Motion to Strike</u>

Plaintiff has filed a Motion to Strike requesting that this Court strike the report of Defendant's untimely disclosed expert, Robert Burch. (ECF No. 85). Plaintiff moves to strike Defendant's expert disclosure pursuant to Rules 26(a) and 37(c)(1) of the Federal Rules of Civil Procedure. Rule 26(a)(2)(D) obligates parties to make expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to provide expert witness information required by Rule 26(a) or (e), that party may not use that information in a motion or at trial, "unless the failure was substantially justified or harmless." *Id.* FRCP 37(c)(1). Even though the language is framed in mandatory terms, "the appellate courts continue to insist that exclusion pursuant to Rule 37(c)(1) falls within the sound discretion of the trial court." *R.G. Barry Corp. v. Olivet Int'l, Inc.*, No. 2:15-CV-826, 2017 WL 4349067, at *10 (S.D. Ohio Sept. 29, 2017) (quoting *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l, Inc.*, No. 13-cv-115544, 2015 WL 348710, at *4 (E.D. Mich. Jan. 26, 2015)).

Defendant opposes Plaintiff's motion to strike arguing that its delay was substantially justified and that it offered Plaintiff extra time to depose its rebuttal expert to cure any prejudice that could result from its untimely disclosure. According to Defendant, shortly after the discovery deadline, it requested that Plaintiff withdraw its File 13 claims due to the absence of evidence demonstrating any vacancy in File 13. (ECF No. 91 at 2). Plaintiff's counsel refused to withdraw the File 13 claims arguing that the lack of a vacancy was immaterial. *Id*. Thereafter, Defendant's Counsel retained expert Robert Burch to prepare a report on the industrial shredder and baler in File 13 and provided that report to Plaintiff's counsel on August 29, 2019, approximately one month after the discovery cut off date of July 23, 2019. *Id*.

While Defendant's delay in disclosing its expert does appear justified, this issue is moot since this Court has already granted summary judgment to Defendant on Plaintiff's File 13 claims.

Accordingly, Plaintiff's Motion to Strike is **DENIED** as **MOOT** since Defendant's expert report relates solely to the issue of whether Plaintiff could safely work in File 13 and was consequently not considered in this Court's decision to deny Plaintiff's File 13 claims.

### IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED in part AND DENIED in part**. Plaintiff's Motion for Summary Judgment is **DENIED**. This Court **GRANTS** Plaintiff's Motion to Amend Answer and **DENIES** Plaintiff's Motion to Strike.

**IT IS SO ORDERED.**

____/s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**Dated: March 16, 2020**