**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL A. DENOEWER,** | : | |
| | : | **Case No. 2:17-cv-660** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **UNION COUNTY INDUSTRIES** | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

This matter is before the Court on Defendant's Motion for Judgment as a Matter of Law. (ECF No. 145). For the reasons that follow, Defendant's Motion is **DENIED**.

## I.    BACKGROUND

On July 28, 2017, Plaintiff Michael Denoewer filed a complaint against Union County Industries ("UCO"), the Union County Board of Developmental Disabilities (the "Board"), and the Columbus Center for Human Services ("CCHS"), asserting disability discrimination. Initially filing *pro se*, Plaintiff subsequently retained counsel and amended his pleadings several times. (*See* ECF Nos. 27, 45, 48). The operative complaint, filed on February 1, 2019, maintained claims only as to UCO for violation of the Americans with Disabilities Act (Count One) and the Ohio Civil Rights Act (Count Two). (ECF No. 48, Ex. 1).

Trial began on October 4, 2021. Following Plaintiff's case-in-chief, on October 6, 2021, Defendant orally moved for a judgment as a matter of law on both claims, arguing that Plaintiff had failed to exhaust administrative remedies. Defendant's Motion was denied orally as to Count One, pursuant to *Barrow v. City of Cleveland*, 773 Fed. App'x 254, 260 (6th Cir. 2019) (courts should construe *pro se* EEOC charges "liberally" to include "'claims that are reasonably related to

1

or grow out of the factual allegations in the EEOC charge'") (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010)). The Court withheld ruling on Defendant's Motion as to Count Two and instructed the parties to submit written briefing. (*See* ECF Nos. 144, 145). The Court now considers Defendant's Motion as to the state-law claim.

## II.     STANDARD OF REVIEW

A court may grant judgment as a matter of law when a party has been fully heard on an issue and the court determines that a reasonable jury would not have legally sufficient evidence to find for the party. Fed. R. Civ. P. 50(a)(1). If a court does not grant the motion and submits the case to a jury, the court retains the ability later to decide the legal questions upon a renewed motion for a judgment as a matter law. Fed. R. Civ. P. 50(b).

When addressing a motion for judgment as a matter of law under Rule 50, the inquiry is the same as for summary judgment under Rule 56. *White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 794 (6th Cir. 2004). A district court may issue judgment as a matter of law "when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005). When there are inferences that can be drawn from the record, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *White*, 364 F.3d at 794. A district court should grant a judgment as a matter of law "only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 427 (6th Cir. 2004).

### III.    LAW & ANALYSIS

In its Motion, Defendant contends it must prevail because Plaintiff failed to exhaust the administrative remedies required by Ohio Revised Code Section 5126.06. (ECF No. 145 at 3). That statute provides in pertinent part:

> [A]ny person who has a complaint involving any of the programs, services, policies, or administrative practices of a county board of developmental disabilities *or any of the entities under contract with the county board*, may file a complaint with the board. Prior to commencing a civil action regarding the complaint, a person shall attempt to have the complaint resolved through the administrative resolution process established in the rules adopted under section 5123.043 of the Revised Code. After exhausting the administrative resolution process, the person may commence a civil action if the complaint is not settled to the person's satisfaction.

O.R.C. § 5126.06(A) (emphasis added).[1] Defendant contends that UCO is within the scope of the statute because it contracts with the Board. Therefore, it argues, Plaintiff was required to exhaust the statute's complaint process before initiating this lawsuit. (ECF No. 145 at 4).

Plaintiff does not claim to have invoked the complaint process in Section 5126.06. Rather, he argues that his employment discrimination claims against UCO are beyond its scope. (ECF No. 144 at 3–4). Specifically, Plaintiff invokes Ohio Administrative Code Section 5123-4-04, which narrows the class of contracting entities that are subject to the statute's exhaustion requirement. According to the regulation:

> "Contracting entity" means an entity under contract with a county board *for the provision of services to individuals with developmental disabilities.*

O.A.C. § 5123-4-04(C)(3) (emphasis added). Plaintiff claims that UCO offered paid employment, which is "a job, not a service." (ECF No. 144 at 4).

---

[1] An exception in Division B of the Section concerns complaints by "an employee of a county board . . . related to the terms and conditions of employment of the employee." O.R.C. § 5126.06(B). That provision is not implicated here, as Plaintiff was an employee of UCO and not the Board.

3

The scope of Section 5126.06 appears to be a novel issue of state law. The Court need not resolve it in the first instance because Defendant's stance at trial undermines the statutory reading it now seeks to advance. At trial, Defendant consistently has argued that it is an employer, not a service provider, so it is estopped from claiming now to be under contract "for the provision of services."

The doctrine of judicial estoppel prevents a party from "prevailing in one phase of the case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Pegram v. Herdrich*, 530 U.S. 211, 227 (2000)). It is a creature of equity; and, as such, courts should consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). "Courts in this circuit apply federal law [when] applying the doctrine of judicial estoppel." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 2021 WL 2643110, at *6 (S.D. Ohio June 28, 2021) (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982)).

Throughout its briefing as well as during trial, Defendant emphasized repeatedly its role as an employer and minimized any responsibility as a service provider. Beginning with its opening argument, Defendant stressed the different roles played by UCO, the Board and CCHS:

> UCO is the employer. … They hire people. UCO is not accredited by the state of Ohio or anybody else. And when Mr. Amerine takes the stand he'll tell you, *we don't provide services* … We don't have a license to do that. CCH[S] does, the county does, but we don't. We are an employer.

Trial Tr. [Defense Opening 5:14–20] (emphasis added).

Defense counsel later elicited testimony from David Amerine, UCO's CEO, to expound upon the relationship of the three organizations:

4

Q: And I want you to help the jury understand the three different entities that we're dealing with here and what their relationships are to one another please.

. . .

A: Part of the privatization process in Union County was to take what had been a historic workshop in the classic sense of the term for individuals with developmental disabilities and move UCO to solely a business employer.

. . .

Q: What changed in 2013 after the privatization?

A: After privatization, the county board ceased running the operation. They ceased providing Medicaid services to employees at UCO. We then . . . identified that CCHS was a Medicaid provider that seemed to be a good fit to partner at UCO. So the Medicaid services necessary for the UCO employees were referred to CCHS to be provided.

Trial Tr. [Amerine Direct 2:13–14, 3:03–06; 3:24–4:08].

In its summary judgment motion, Defendant described the relationship as follows:

Until 2013, UCO operated as a "sheltered workshop" for individuals receiving services *from the UCBDD* [the Board] under the direct supervision of the UCBDD. . . . In October 2013, UCO began operating as a *private employer* of people with disabilities independent of the UCBDD. . . . CCHS provides the Medicaid support services to UCO's developmentally disabled employees that used to be provided by the UCBDD prior to privatization.

(ECF No. 80 at 8) (emphasis added). Here too, UCO describes itself as the employer, in contrast to the two service providers.

Furthermore, the Court observes that Defendant declined to assert an exhaustion defense at the summary judgment stage. The Court need not, and does not, consider waiver arguments in this opinion. The late stage of Defendant's motion does, however, increase the risk of "unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

In short, UCO consistently advanced the argument that it is an independent employer, in contrast to the two service providers (first the Board, and later CCHS). This primary stance is deeply at odds with its position in its Motion sub judice. Defendant asks the jury to consider it an independent employer for the purpose of shifting responsibility onto the service providers. Now,

5

Defendant asks the Court to consider it a service provider for the purpose of administrative exhaustion. To adopt Defendant's argument on exhaustion would imply that the Defendant has such a close relationship with the Board that Plaintiff must use that agency's administrative scheme before he can invoke his rights in the judicial system. Yet, Defendant spent the better part of the trial distancing itself from the Board and CCHS. The doctrine of judicial estoppel is designed to prevent precisely that type of "gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Lorillard Tobacco Co.* at 757.

When holding Defendant to its stance at trial, it becomes clear that UCO is not "under contract with a county board for the provision of services to individuals with developmental disabilities," as the regulation requires. O.A.C. § 5123-4-04(C)(3). Therefore, Plaintiff was not required to exhaust the administrative remedies in O.R.C. § 5126.06 before bringing his claim against UCO.

## IV.    CONCLUSION

Accordingly, Defendant's Judgment as a Matter of Law (ECF No. 145) is **DENIED** as to the state-law claim as well.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: October 14, 2021**